**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| APARNA VASHISHT-ROTA,<br><br>                              Plaintiff,<br><br>v.<br><br>HARRISBURG UNIVERSITY,<br><br>                              Defendant. | Case No.: 3:20-cv-00967-RBM-KSC<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (Doc. 63); and**<br><br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S REQUEST FOR JUDICIAL NOTICE (Doc. 64)**<br><br>**[Docs. 63, 64]** |

On March 17, 2021, Defendant Harrisburg University ("Defendant" or "Harrisburg") filed a motion to dismiss Plaintiff's second amended complaint (Docs. 49, 62) ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss"), along with a request for judicial notice ("RJN") regarding Department of Fair Employment and Housing ("DFEH") right-to-sue letters and related correspondence.  (Docs. 63-64.) Plaintiff Aparna Vashisht-Rota ("Plaintiff" or "Vashisht-Rota"), appearing pro se, filed an

1

opposition to the Motion to Dismiss on June 2, 2021.  (Doc. 67.)  Defendant filed a reply on June 23, 2021.  (Doc. 68.)

For the reasons below, Defendant's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART** and Defendant's Request for Judicial Notice is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

This is the third iteration of Plaintiff's complaint.  Plaintiff filed her initial complaint (Doc. 1) on May 26, 2020, and then a superseding first amended complaint ("FAC") on June 15, 2020 (Doc. 7).  Defendant filed a motion to dismiss the FAC, and Plaintiff subsequently filed a motion for leave to file a SAC.  (*See* Docs. 11, 49.)  The Court granted Plaintiff leave to file a SAC and therefore denied Defendant's motion to dismiss the FAC as moot.  (Doc. 61.)  The facts from the SAC are taken as true for purposes of the Motion to Dismiss and are outlined below.

Defendant provides a curricular practical training[1] ("CPT") program, which allows foreign students to obtain work authorization at the university level while awaiting work visas.  (*See* SAC at 3-4.)  Plaintiff alleges Defendant is in a principal/agent relationship with "Main Agent," who is Defendant's "sole vendor" that handles international student recruitment.  (*See* SAC at 4-5, 8.)  "Main Agent" is Plaintiff's alleged former employer that subjected Plaintiff to harassment, refused to pay Plaintiff for two years of work, and acted as a restraint on her trade in placing foreign students at Harrisburg.  (*See* SAC at 5, 13-14.)

In early to mid-2019, Plaintiff filed a grievance with Defendant, notifying Eric Darr, President of Harrisburg, regarding "Defendant's Main Agent's harassment, nonpayment

---

[1] Plaintiff does not define CPT in the SAC.  However, the Court takes judicial notice of related cases and understands this word to be an abbreviation for "curricular practical training."  *See Vashisht-Rota v. Ottawa Univ.*, No. 20-cv-959-RBM-KSC, Doc. 48, ¶ 9 (Nov. 11, 2021).

for work performed and the ongoing economic harm Plaintiff faces directly due to Defendant and Main Agent's conduct." (*Id*. at 7.) Plaintiff also wrote Darr about Main Agent's "coercive tactics such as intimidation[] and bullying" and attempt to coerce an incomprehensible agreement. (*Id*.) Plaintiff alleges "Darr simply forwarded the messages to Plaintiff's abuser of 4 years, the Main Agent, at that time and essentially coerced Plaintiff to work with Main Agent or not at all by refusing to provide an alternative route." (*Id*.) Plaintiff alleges Main Agent required her to follow "severely oppressive policies" regarding approval of work and "was then fired for an alleged violation of an incomprehensible agreement with the Main Agent." (*Id*.) Plaintiff is now "unable to place students with Defendant." (*Id*.)

Plaintiff claims she has been harmed by Main Agent's negligence, and Defendant is vicariously liable for such negligence and its negligent failure to supervise Darr on how to handle complaints regarding protected activity. (*Id*.at 8.) Plaintiff also alleges Defendant "retaliated against Plaintiff by taking adverse actions including creating a hostile environment for reporting harassment," aided and abetted in Main Agent's harassment, failed to correct Main Agent's harassment and discrimination, engaged in unlawful conduct acting as a restraint on her trade, and discriminated against her. (*See generally* SAC.)

A.  Claims in SAC

Plaintiff, representing herself pro se, asserts the following causes of action in the operative SAC: (1) negligence—vicarious liability; (2) retaliation for opposing harassment and discrimination in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940 (h); (3) aiding and abetting harassment in violation of FEHA; (4) failure to correct harassment in violation of FEHA; (5) unfair business practice in violation of Cal. Bus. & Prof. §§ 17200 *et seq.* ("UCL"); (6) prohibited restraints on trade in violation of Cal. Bus. & Prof. § 16720 ("Cartwright Act"); (7) violation of Cal. Civ. Code § 51 *et seq.* and FEHA § 12948; (8) violation of Civil Code § 51.5; and (9) failure to prevent discrimination in violation of Civil Code § 51. (*See generally* SAC.)

///

B. <u>Prior & Pending Related Cases in this District</u>

Vashisht-Rota, representing herself pro se, has filed several other related cases in this District, four of which are before the undersigned where she is appearing pro se. *See Vashisht-Rota v. Howell Management Services*, No. 3:20-cv-00321-RBM-KSC;[2] *Vashisht-Rota v. Ottawa Univ.*, No. 3:20-cv-00959-RBM-KSC; *Vashisht-Rota v. Bluechip Servs.*, No. 3:22-cv-00900-RBM-KSC; and *Vashisht-Rota v. Utah Attorney General*, No. 3:22-cv-00978. Plaintiff, through counsel, filed two other lawsuits against Howell Management Services ("HMS") which were dismissed at the pleading stage due to the claims arising from the same transaction or occurrence as claims pending in Utah state court litigated between the parties. *See generally Rota v. Howell Management Services, et. al.*, No. 3:18-cv-02010-L-AGS; *Rota v. Howell Management Services, LLC*, No. 3:19-cv-00512-L-MDD.

## II.   DISCUSSION

A. <u>Request for Judicial Notice</u>

In support of its Motion to Dismiss, Defendant requests the Court consider documents not attached to the SAC. Defendant contends the Court may consider these documents via the incorporation by reference doctrine, or alternatively, via judicial notice. (*See* Doc. 63-1 at 12-13; Doc. 64-1 at 3-4.) Specifically, Defendant asks the Court to consider the following documents:

- A March 27, 2018 DFEH right-to-sue letter issued to Plaintiff relating to her March 27, 2018 amended complaints of discrimination against HMS and Harrisburg asserting claims of sexual harassment/hostile work environment, gender discrimination, and retaliation. (Doc. 66-1, Ex. A.)[3]

---

[2] This case is presently on appeal.

[3] The Declaration of Diana Tokarsky alleges it attaches as Exhibit A the March 27, 2018 DFEH right-to-sue letters against HMS and Harrisburg. (Doc. 64-1 at ¶ 2, Ex. A.) However, the originally-produced Exhibit A only contained the March 27, 2018 DFEH right-to-sue letter against HMS. (Doc. 64-2.) Defendant subsequently filed a Notice of

- March 28, 2018 email correspondence from Plaintiff to Darr providing copies of her DFEH right-to-sue letters against HMS. (Doc. 64-3, Ex. B.)
- A March 28, 2018 DFEH right-to-sue letter issued to Plaintiff relating to her March 28, 2018 amended complaint of discrimination against HMS asserting claims of sexual harassment/hostile work environment, gender discrimination, and retaliation. (Doc. 64-4, Ex. C.)
- A January 5, 2020 right-to-sue letter against Harrisburg asserting claims of harassment and discrimination due to race, national origin, and sexual harassment/hostile work environment. (Doc. 64-5, Ex. D.)

As a general rule, the court is limited to reviewing only the complaint when ruling on a 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2011) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)); *see also U.S. v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011). If a court considers documents extraneous to the pleadings on a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). However, "[t]here are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). As to the incorporation-by-reference doctrine, when documents are not physically attached to the complaint, they may be considered if: "(1) the complaint refers to the document; and (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Corinthian Colleges*, 655 F.3d at 998; *see also U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("[E]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.") (citations omitted). "[U]nlike judicial notice, a court may assume [an incorporated

---

Errata which contains complete copies of Exhibit A attached to the RJN, including the March 27, 2018 right-to-sue letter against Harrisburg. (Doc. 66-1 at 13-15.)

5

document's] contents are true for purposes of a motion to dismiss " but "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003 (internal quotation marks and citation omitted).

Pursuant to Federal Rule of Evidence Rule 201, a court may take judicial notice of adjudicative facts that are "not subject to reasonable dispute" because they are either (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(a), (b). Accordingly, "[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Khoja*, 899 F.3d at 999 (quoting *Lee*, 250 F.3d at 689). "But a court cannot take judicial notice of disputed facts contained in such public records." *Id.*

Defendant contends these documents may be incorporated by reference and/or judicially noticed because the SAC alleges Plaintiff "has exhausted her administrative remedy requirements" and DFEH "has issued a Right To Sue Plaintiff . . . dated January 5, 2020." (Doc. 63-1 at 13 (citing SAC ¶¶ 3-4).) Defendant also contends judicial notice is appropriate because the SAC also alleges that "in early-mid 2019 . . . Plaintiff, a minority woman, filed a grievance with Defendant. Specifically, Plaintiff notified [Darr] . . . of Defendant's Main Agent's harassment, nonpayment for work performed and the ongoing economic harm Plaintiff faces directly due to Main Agent's conduct." (Doc. 64-1 at 4 (citing SAC ¶¶ 20-21).)

Plaintiff's response notes the Declaration in Support of Defendant's Request for Judicial Notice references that March 2018 right-to-sue letter against Harrisburg but it does not attach that document as Exhibit A to the RJN. As stated above, Defendant attached a complete version of Exhibit A in its subsequent notice of errata. *See supra* p. 4 n. 3. Other than the foregoing, Plaintiff does not appear to contest the authenticity of the right-to-sue letters or email correspondence to Darr, nor does she oppose the RJN. (*See* Doc. 67 at 5.)

As to the January 2020 DFEH right-to-sue letter, the SAC explicitly refers to this

document. (SAC at ¶¶ 3-4.) Additionally, this letter is central to Plaintiff's claims as exhaustion of administrative remedies is a requirement for Plaintiff's FEHA claims. *Valdez v. City of Los Angeles*, 282 Cal. Rptr. 726, 736 (Cal. Ct. App. 1991). Finally, Plaintiff does not appear to contest the authenticity of the document. As such, the January 2020 right-to-sue letter may be incorporated by reference into the SAC. *Corinthian Colleges*, 655 F.3d at 998; *see also Ritchie*, 342 F.3d at 908. The March 27, 2018 and March 28, 2018 DFEH right-to-sue letters, on the other hand, are not explicitly referenced in the SAC. While Defendant contends Plaintiff intentionally omitted these letters to avoid any claims being barred by the statute of limitations, the Court is not inclined to question Plaintiff's motive for omitting these letters at the motion to dismiss stage. (Doc. 63-1 at 13.) Since the SAC is devoid of any facts relating to right-to-sue letters, grievances, or reports of grievances in March 2018, the Court cannot find that the March 2018 letters are central to Plaintiff's claims. As such, the March 2018 right-to-sue letters cannot be incorporated by referenced into the SAC. However, right-to-sue letters are proper subjects of a request for judicial notice, as the accuracy of DFEH right-to-sue letters and complaints cannot reasonably be questioned. *Wagner v. Wal-Mart Stores, Inc.*, No. 13-cv-3475, 2013 WL 5645169, *1 n.1 (N.D. Cal. Oct. 16, 2013); *Hugo Contreras v. Castro Valley Unified Sch. Distr.*, No. 06-4169, 2007 WL 9810949, *1 n.1 (N.D. Cal. Feb. 26, 2007). Accordingly, the Court **GRANTS** Plaintiff's request for judicial notice of all of the right-to-sue letters and **GRANTS** Plaintiff's request for the January 5, 2020 right-to-sue letter be incorporated by reference into the SAC.

As to the March 28, 2018 email correspondence from Plaintiff to Darr providing copies of her DFEH right-to-sue letters against HMS, the SAC does not explicitly reference this correspondence. While the SAC alleges Plaintiff notified Darr of Main Agent's conduct and the filing of a grievance with Defendant, it alleges this occurred in "early-mid 2019," not 2018. (*See* SAC ¶ 20.) Given the date discrepancy between the email correspondence and the SAC, a dispute exists as to whether this document forms the basis of Plaintiff's claims. As such, this document cannot be incorporated by reference into the

SAC. Moreover, the truth of any facts contained within email correspondence is not within the category of documents whose authenticity cannot reasonably be questioned. *See Stamas v. Cty. of Madera*, No. cv-F 09-0753 LJO-SMS, 2010 WL 1416866, *4 (E.D. Cal. Apr. 8, 2010) (declining to take judicial notice of email correspondence because they are not facts generally known to the public and are not capable of accurate and ready determination). Accordingly, the Court **DENIES** Plaintiff's request for judicial notice of the March 28, 2018 email correspondence.

### B. Motion to Dismiss

Defendant seeks dismissal of the SAC on three separate grounds, including: (1) all claims are time barred by the statute of limitations; (2) the UCL and Cartwright Act claims fail as a matter of law because the parties have no business relationship; and (3) the "failure to correct" harassment claim fails as a matter of law because Harrisburg never employed Plaintiff, there has been no predicate finding of harassment, and Plaintiff failed to exhaust her administrative remedies. (Doc. 63-1 at 32.)

#### i. Legal Standard

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). At the motion to dismiss stage, all material factual allegations in the complaint are accepted as true and are construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). "A complaint should not be dismissed unless a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. (citation omitted).

To avoid dismissal under Rule 12(b)(6), a complaint need not contain detailed factual allegations; rather, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When a Rule 12(b)(6) motion is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

    ii. *Timeliness of Plaintiff's Claims*

Defendant contends Plaintiff's own allegations prove her claims are time-barred because they are predicated upon the SAC's alleged discriminatory activity that occurred when "Plaintiff worked with the Defendant's Main Agent between March 2015 and March 2017." (*See* Doc. 63-1 at 7, 9-10, 12, 14-15; *see also* SAC ¶ 16.) Defendant argues Plaintiff is attempting to "extend her statute of limitations for harassment and discrimination that occurred in 2017, by filing a new FEHA complaint in 2020 and ignoring the 2018 FEHA complaint and right to sue arising from the same alleged activity." (Doc. 63-1 at 13.) Defendant contends the statute of limitations for Plaintiff to raise any complaints with any purported employer would have run in 2018, since her employment ended in March 2017.[4]

---

[4] Defendant cites May 6, 2017 as the date Plaintiff ended her employment with the Main Agent because this is what Plaintiff alleged in her Amended Complaint filed on June 15, 2020. (*See* Doc. 63-1 at 8 n. 4 (citing Doc. 7 ¶¶ 24-26).) Defendant also contends the March 28, 2018 right-to-sue letter against HMS cites May 6, 2017 as the end date of Plaintiff's employment. The Court declines to use May 6, 2017 as Plaintiff's end date of employment for two reasons. First, the Court must construe all well-pleaded allegations in the superseding SAC as true, and the SAC alleges Plaintiff ended employment with the Main Agent in March 2017. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *see also Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002,

9

Defendant alternatively argues the statute of limitations would have expired March 27, 2019, one year after Plaintiff "forwarded the DFEH's March 28, 2018 right to sue letter against [Harrisburg] to President Darr" or March 26, 2019, one year from the date of the March 27, 2018 right-to-sue letter. (Doc. 63-1 at 14-15.)

A statute of limitations defense may be raised by a motion to dismiss "[i]f the running of the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Such a motion "can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Id.* Where the statute of limitations question turns on factual issues that may be disputed, the question is more appropriately addressed at a later stage of the proceeding. *See Barnett v. Kapla*, No. 20-cv-03748-JCS, 2020 WL 6737381, *5 (N.D. Cal. Sept. 28, 2020) (citing *Jablon*, 614 F.2d at 682.)

The act that forms of the basis of the SAC is not focused on Plaintiff's March 2017 end date of employment with Main Agent or the March 2018 right-to-sue letter. Rather, it is focused on Plaintiff filing a grievance with Defendant in "early-mid 2019" regarding Main Agent's alleged harassment and nonpayment for work performed and Defendant "essentially coerc[ing] Plaintiff to work with the Main Agent or not at all by refusing to provide an alternative route." (SAC ¶¶ 20, 21.) The SAC is also premised upon the January 5, 2020 right-to-sue letter against Defendant. (SAC ¶ 4.) Because a factual dispute exists as to the timeliness of the entirety of Plaintiff's complaint, the Court **DENIES** Defendant's motion to dismiss all claims on statute of limitations grounds.

---

1008 (9th Cir. 2015) (in the Ninth Circuit, "an amended complaint supersedes the original, the latter being treated thereafter as non-existent.") (citation omitted). Second, although the judicially noticed March 28, 2018 right-to-sue letter alleges Plaintiff ended employment with HMS on May 6, 2017, the "court cannot take judicial notice of ***disputed*** facts contained in such public records." *Khoja*, 899 F.3d at 999 (citing *Lee*, 250 F.3d at 689) (emphasis added). Thus, any time Defendant references an end date of employment, the Court will apply the March 2017 end date as contained within the SAC. (*See* SAC ¶ 16.)

> *a. FEHA Claims (Second, Third, Fourth, Seventh, Eighth, and Ninth Causes of Action) and UCL & Cartwright Act Claims (Fifth and Sixth Causes of Action)*

Defendant contends all FEHA causes of action are time barred because "Plaintiff failed to bring this action within one year of the date of the [March 2018] Right to Sue Letter against [Defendant]." (Doc. 63-1 at 15.) Defendant contends Plaintiff's UCL and Cartwright Act claims are derivative of the FEHA claims and fail for the same reasons. (*Id.* at 16.) Defendant also makes a statute of limitations argument based upon Plaintiff's March 2018 email correspondence with Darr, however, the Court will not address this argument as it declines to take judicial notice of such correspondence. *See supra* Section II(A). In any event, as discussed in Section II(B)(ii), *supra*, a factual dispute exists as to the timeliness of Plaintiff's FEHA, UCL, and Cartwright Act claims because the SAC is premised upon the January 2020 right-to-sue letter and report of a grievance to Defendant in "early-mid 2019." Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiff's FEHA, UCL, and Cartwright Act claims on statute of limitations grounds.

> *b. First Cause of Action—Negligence (Vicarious Liability)*

Defendant interprets the negligence claim as one arising from an alleged tortious discharge from employment in violation of public policy. (Doc. 63-1 at 17.) In light of the same, Defendant centers its argument on Plaintiff's March 2017[5] termination from the Main Agent's employment and contends the claim is barred by California's two-year personal injury statute of limitations. (*Id.* (citing CAL. CIV. CODE § 335.1).)

In liberally construing the SAC, the negligence claim appears to be based on allegations broader than tortious discharge from employment as it includes claims that Defendant failed to supervise Darr on how to properly handle grievances. (SAC ¶¶ 27-28.) The SAC alleges Darr's mishandling of Plaintiff's grievance occurred in "early-mid 2019."

---

[5] Any time Defendant references a May 2017 end date of employment, the Court will apply the March 2017 end date as contained within the SAC. *See supra* p. 9 n. 4

1  (*See* SAC ¶ 20.)  Because Plaintiff filed her complaint on March 17, 2021, the claim is not
2  barred by the two-year statute of limitations.  Accordingly, the Court **DENIES** Defendant's
3  motion to dismiss Plaintiff's negligence claim on statute of limitations grounds.

                  iii.    *Fifth and Sixth Causes of Action—UCL & Cartwright Act Claims*

                      a.  *UCL Claim (Fifth Cause of Action)*

As to the UCL claim, Defendant contends it should be dismissed as a matter of law due to a lack of any employment or business relationship between the parties.  (Doc. 63-1 at 19-20.)

California's UCL prohibits unfair competition by means of any unlawful, unfair or fraudulent business practice.  CAL. BUS. & PROF. CODE §§ 17200 *et seq*.  "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs."  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (internal citation omitted).  The scope of the UCL is "sweeping, embracing anything that can be properly called a business practice and that at the same time is forbidden by law."  *Cel-Tech Comms., Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 560 (Cal. 1999) (internal quotation marks and citations omitted).  Plaintiff appears to proceed under the "unlawful" prong of the UCL, where her UCL claims are derivative to her other causes of action for retaliation for opposing harassment, aiding and abetting Main Agent's harassment, and failing to prevent harassment.  (SAC ¶¶ 58-63.)

Defendant has not satisfied its burden of proving dismissal is appropriate at this stage of litigation because Plaintiff's derivative claims for retaliation for opposing harassment and aiding and abetting harassment have survived the instant 12(b)(6) motion.  Moreover, Defendant cites no authority for the proposition that an employment relationship is required to assert a UCL claim, and it likewise fails to provide any analysis as to how its conduct cannot fall within the broad scope of a "business practice" as defined under the UCL.  *See Cel-Tech Comms., Inc.*, 973 P.2d at 560.  Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiff's UCL claim.

/ / /

*b. Cartwright Act Claim (Sixth Cause of Action)*

Defendant seeks dismissal of Plaintiff's Cartwright Act claim for the same reasons it seeks dismissal of the UCL claim. (Doc. 63-1 at 19-20.)

A cause of action for a conspiracy in restraint of trade in violation of the Cartwright Act "must allege (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts . . . . General allegations of agreement have been held sufficient . . . providing the unlawful acts or civil wrongs are otherwise sufficiently alleged." *Kunert v. Mission Fin. Servs. Corp.*, 1 Cal. Rptr. 3d 589 n.15 (Cal. Ct. App. 2003) (internal quotation omitted). The pleading of Cartwright Act violations "demands a high degree of particularity." *Starlight Cinemas v. Regal Ent. Grp.*, No. CV 14-5463-R, 2014 WL 7781018, *1 (C.D. Cal. Oct. 23, 2014), *aff'd*, 691 F. App'x 404 (9th Cir. 2017) (internal citation omitted). "General allegations of a conspiracy unaccompanied by a statement of facts constituting the conspiracy and explaining its objectives and impact in restraint of trade will not suffice." *Id*. When pleading an antitrust violation, allegations must be enough to raise a right to relief about the speculative level. *Id*. (citing *Twombly*, 550 U.S. at 553). "The complaint must allege facts such as a specific time, place, or person involved in the alleged conspiracies to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Id*. (citation omitted).

As to element one, the SAC merely contains a conclusory allegation that Defendant and Main Agent "agreed to boycott Plaintiff with the purpose to restrain competition and to 'block her.'" (SAC ¶ 64.) The SAC offers no details as to a specific time, place, or person involved in how Defendant allegedly "agreed to boycott Plaintiff." The SAC therefore insufficiently shows the formation and operation of a conspiracy. Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's Cartwright Act claim.

*iv. Fourth Cause of Action—Failure to Correct Harassment*

Defendant contends Plaintiff's claim for failure to correct harassment should be dismissed due to lack of an employment relationship, Plaintiff's failure to prove any

13

underlying harassment and/or retaliation, and Plaintiff's failure to exhaust administrative remedies. (Doc. 63-1 at 20-22.)

California Government Code § 12940(k) makes it unlawful for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." CAL. GOV. CODE § 12940(k). To state claim for failure to prevent harassment, a plaintiff must show: "(1) plaintiff was subjected to discrimination, harassment, or retaliation; (2) defendant failed to take all reasonable steps to prevent discrimination, harassment or retaliation; and (3) this failure caused plaintiff to suffer injury, loss or harm." *Andrade v. Arby's Rest. Grp., Inc.*, 225 F. Supp. 3d 1115, 1131 (N.D. Cal. 2016) (internal citation and quotations omitted). Importantly, "[a] plaintiff cannot state a claim for failure to prevent harassment unless the plaintiff first states a claim for harassment." *M.F. v. Pac. Pearl Hotel Mgmt LLC*, 224 Cal. Rptr. 542, 548 (Cal. Ct. App. 2017) (internal citations omitted). As to an underlying claim for harassment, an independent contractor is covered by the provision of FEHA prohibiting harassment of a "person providing services pursuant to a contract." *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1213-14 (C.D. Cal. 2004) (citing CAL. GOV. CODE § 12940(j)(1)).

Defendant focuses on the lack of an employment relationship between Harrisburg and Plaintiff in seeking dismissal of the failure to prevent harassment claim. It is true that the SAC does not allege an employment relationship exists between Defendant and Plaintiff. Nor does the SAC adequately plead facts relating to the existence of an independent contractor relationship between Plaintiff and Defendant. Instead, the SAC alleges "Defendant has a sole vendor ('Main Agent') handle the entire recruitment for international students." (SAC ¶ 12.) Plaintiff further alleges:

> [i]t is industry practice that the Main Agent follows all of Defendant's policies[.] 'Industry standards' are included in contracts between universities and their agents . . . . Contracts are the foundation of such partnerships and usually stipulate that any third-party relationships that arise are also bound by their terms. Industry standards and norms, included in such contracts, apply to all actors within their scope- institutions, agents and any third parties. For instance, the agreements negotiated between the Plaintiff and the Main Agent state that 'the representative is authorized

> to counsel and inform prospective clients solely in accordance with the published promises and commitments made by Main Agent and its partner colleges and universities.' That is, the terms of the agreements negotiated between the Main Agent and its partner colleges and universities have a 'trickle down' effect and apply equally to any third parties that come within their purview.

(*Id*. ¶ 13.) It alleges Plaintiff was classified as Main Agent's employee, "Plaintiff's work was for the Main Agent's present and future universities of which Defendant is one[,]" and "Main Agent was . . . Defendant's agent when the incidents occurred." (*Id*. ¶¶ 17, 23, 26.) The SAC's conclusory allegations of "industry practice" and "industry norms" are insufficient to plead the existence of any employment or independent contractor relationship between Plaintiff and Defendant. *See Twombly*, 550 U.S. at 557. Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's failure to prevent harassment claim.

            v.      *Leave to Amend*

Defendant argues leave to amend should be denied. (Doc. 63-1 at 22-23.) Citing Plaintiff's numerous attempts[6] to amend her complaint, Defendant contends any further amendment would be futile[7] and in bad faith. (*Id*.) Plaintiff requests leave to amend her complaint because she "is a new entrant to universities, CPT, international recruitment, academic research, and the law." (Doc. 67 at 6.)

When determining whether to grant leave to amend, courts generally consider five factors, known as the *Foman* factors as stated by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182 (1962). These factors include: (1) undue delay; (2) bad faith on the part of the party seeking leave to amend; (3) undue prejudice to the non-moving party; (4) futility of amendment; and (5) whether the plaintiff has previously amended the complaint.

---

[6] Defendant contends this is Plaintiff's fifth attempt to amend the complaint. However, as outlined above, this is Plaintiff's third iteration of the complaint. *See supra* Section I.
[7] Defendant argues, in part, that amendment is futile on the basis that Plaintiff's claims are time-barred. Such argument is moot in light of the undersigned's ruling in Section II(B)(ii).

*Id*. The Ninth Circuit has held that "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id*. (emphasis omitted). In *Parents for Privacy v. Barr*, 949 F.3d 1210, 1239 (9th Cir. 2020), the Ninth Circuit affirmed a district court's denial of leave to amend on futility grounds reasoning "[t]he problem with Plaintiffs' complaint, however, is not the sufficiency of their factual allegations" but "[r]ather . . . Plaintiffs' legal theories fail." *Id*. There, "[a]mending the complaint [would] not change, for example, the extent of the rights that are protected." *Id*.

As stated above, this is the third iteration of Plaintiff's complaint. Plaintiff filed her initial complaint (Doc. 1) on May 26, 2020, and then a superseding FAC on June 15, 2020 (Doc. 7). The Court granted Plaintiff leave to file a SAC without ruling on Defendant's motion to dismiss the FAC. (Doc. 61.) Thus, the Court has not previously ruled on the merits of any motion to dismiss, nor has it put Plaintiff on notice of any deficiencies in her complaints in the instant case. While this case has been in the pleading stage since 2020, some of this delay has been due to the transfer of this case to four different judges. (*See* Docs. 25, 47, 70, 71.) Aside from concerns of litigation time and money, Defendant has not shown it will suffer any prejudice from allowing Plaintiff an opportunity to amend. At this juncture, the Court cannot conclude Plaintiff is seeking to amend the complaint in bad faith as Defendant has not met its burden of proving the same. Finally, "a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citing *Baker v. Pac. Far E. Lines, Inc.*, 451 F. Supp. 84, 89 (N.D. Cal. 1978)). For the reasons stated above, the Court **DENIES** Defendant's request that the Court deny Plaintiff leave to amend.

### III.   CONCLUSION

For the reasons discussed above:

1. Defendant's Request for Judicial Notice (Doc. 64) is **GRANTED IN PART** and **DENIED IN PART**.
2. Defendant's Motion to Dismiss (Doc. 63) is **GRANTED IN PART** and **DENIED IN PART**.
3. Plaintiff **MAY FILE** an amended complaint on or before twenty-one (21) days from the electronic docketing of this order.

**IT IS SO ORDERED**.

DATE: January 4, 2023

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE